ECF No. 75



**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA and STATE OF FLORIDA *ex rel.* Tarik Hasan and Stephanie Million,**

**Plaintiffs-Relators,**

**v.** **Case No.: 6:21-cv-869-GAP-NWH**

**HEALTH FIRST, INC.; PALM BAY HOSPITAL, INC.; VIERA HOSPITAL, INC.; HEALTH FIRST MEDICAL GROUP, LLC; PHYSICIAN DEFENDANT 1 PHYSICIAN DEFENDANT 1; and PHYSICIAN DEFENDANT 2 PHYSICIAN DEFENDANT 2,**

**Defendants.**

**<u>ORDER</u>**

This cause comes before the Court on the Joint Motion to Permanently Seal the Case (Doc. 44) (the "Motion") filed by Defendants Health First, Inc., Palm Bay Hospital, Inc., Viera Hospital, Inc., Health First Medical Group, LLC (collectively, the "Hospital Defendants"), PHYSICIAN DEFENDANT 1, M.D., and PHYSICIAN DEFENDANT 2, M.D. (the "Individual Defendants"). Relators Tarik Hasan, M.D. and Stephanie Million, D.O. (the "Relators") join in the Motion (the Individual Defendants, the Hospital Defendants, and the Relators are hereinafter referred to collectively as the "Movants"). The United States and the State of Florida take no position on the Motion; however, the United States has separately requested that its extension memoranda remain under seal. (*See id.* at 5; Doc. 58).

## PROCEDURAL BACKGROUND

This *qui tam* action was filed under seal pursuant to the Federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, on May 19, 2021. (Doc. 1). The initial Complaint and Amended Complaint (filed on July 1, 2025) alleged in sum that the Defendants overbilled Medicare and Medicaid by performing orthopedic procedures on an inpatient basis as opposed to an outpatient basis. (Doc. 1 at 2-3, Doc. 30). On February 6, 2026, both the United States and the State of Florida declined to intervene. (Doc. 42). On February 9, 2026, the Relators filed a notice of voluntary dismissal (Doc. 43), and the Court dismissed the case on February 11, 2026 (Doc. 51; *see also* Doc. 55).

The Movants filed the instant Motion and a memorandum in support on February 9, 2026. (Docs. 44, 45). The Motion asks the Court to permanently seal the case in its entirety, or in the alternative, to redact the names of the Relators and Defendants from the record. (Docs. 44, 45). The Court requested additional briefing, (Doc. 49), which the Movants filed on February 20, 2026, (Doc. 58). It also held a hearing on March 23, 2026, during which counsel for the Defendants presented argument in favor of the Motion. The Court raised several concerns at the hearing and permitted counsel to file a third brief in support of the Motion. (Doc. 74).

## LEGAL STANDARD

The Eleventh Circuit recognizes a "presumptive common law right to inspect and copy judicial records." *United States v. Rosenthal*, 763 F.2d 1291, 1292–93 (11th Cir. 1985) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). "The common law right of access to judicial proceedings, an essential component of our

system of justice, is instrumental in securing the integrity of the process." *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (per curiam) (citation omitted).

The public presumptively has access to filings "which may properly be considered public or judicial records." *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 62 (11th Cir. 2013). "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Id.*; *see also IDT Corp. v. eBay*, 709 F.3d 1220, 1223 (8th Cir. 2013) (describing the "modern trend in federal cases to treat pleadings in civil litigation (other than discovery motions and accompanying exhibits) as presumptively public, even when the case is pending before judgment"). Exhibits attached to a complaint "must also be treated as judicial records[.]" *AbbVie Prods.*, 713 F.3d at 63.

The public's right of access is not absolute. "The right of access creates a rebuttable presumption in favor of openness of court records," *Gubarev v. Buzzfeed, Inc.*, 365 F. Supp. 3d 1250, 1256 (S.D. Fla. 2019), that "may be overcome by a showing of good cause, which requires balancing the asserted right of access against the other party's interest in keeping the information confidential. Whether good cause exists is decided by the nature and character of the information in question." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (alterations and internal quotation marks omitted). Consistent with this directive, a party seeking to file a document under seal must address the applicable requirements set forth in Middle

District of Florida Local Rule 1.11. The moving party must also satisfy the Eleventh Circuit's standard concerning the public's common law interest and right of access to inspect and copy judicial records. *See, e.g., Chi. Trib. Co.*., 263 F.3d at 1311–12; *Rosenthal*, 763 F.2d at 1292–93.

While the Eleventh Circuit has not articulated a specific list of factors, courts conducting a "good cause" balancing test generally consider, among other things:

1. whether allowing access would impair court functions or harm legitimate privacy interests,
2. the degree of and likelihood of injury if made public,
3. the reliability of the information,
4. whether there will be an opportunity to respond to the information,
5. whether the information concerns public officials or public concerns,
6. the availability of a less onerous alternative to sealing the documents,
7. whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage,
8. whether access is likely to promote public understanding of historically significant events, and
9. whether the press has already been permitted substantial access to the contents of the records.

*Gubarev*, 365 F. Supp. 3d at 1256 (citing *Romero*, 480 F.3d at 1246; *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983)).

## DISCUSSION

As an initial matter, the Motion requests a permanent seal of the entire docket, but there are only a handful of substantive records on file in this case: the initial Complaint and attached exhibits (Doc. 1), the Amended Complaint and attached exhibits (Doc. 30), the Motion to Seal and related filings discussed above, and ten memoranda in support of the Government's motions to extend the intervention period. (Docs. 5, 8, 11, 14, 17, 20, 23, 27, 36, 40). The remaining docket entries are procedural and contain no substantive information. As a result, for purposes of the instant Motion, the Court will focus on the information contained in the substantive filings.

The initial Complaint is a 48-page document alleging six claims against five defendants, including three of the Hospital Defendants. (Doc. 1). All the allegations center around improper billing for inpatient orthopedic procedures that could have been performed as outpatient procedures at a reduced cost. The Complaint further alleges that the defendants put pressure on doctors to "utilize the inpatient admission status." (Doc. 1 at 20). The remainder of the factual allegations are specific examples of this conduct, including the Relators' observations and experiences. Five exhibits are attached to the Complaint. (Docs. 1-1 through 1-5). Each exhibit is a collection of screenshots from patient care notes with the patient's name redacted. The Complaint alleges that these exhibits are examples of medical records that do not support the necessity of impatient care. (Doc. 1, ¶¶ 109–13, 115–17, 120–23, 127, 135).

The Amended Complaint contains substantially the same allegations and claims as the original Complaint. (Doc. 30). It appears to differ in only three material respects. First, it contains only three exhibits as opposed to five, though they appear to be identical to three of the exhibits attached to the original complaint. Second, the Amended Complaint removes two of the defendants, Holmes Regional Medical Center, Inc. and Cape Canaveral Hospital, Inc., and adds three, Health First Medical Group, LLC and the two Individual Defendants. Third, it adds allegations that the Individual Defendants personally billed for inpatient services "despite the absence of medical necessity required for the inpatient billing." (*See e.g.*, Doc. 30, ¶¶ 33, 34, 99, 102–05, 122).

The final category of substantive information on the docket is contained within the Government's ten memoranda in support of its motions to extend the intervention period. (Docs. 5, 8, 11, 14, 17, 20, 23, 27, 36, 40). Each memorandum is largely identical, summarizing the allegations in the operative complaint and explaining the Government's investigation since the prior extension. The Government separately requests that these memoranda remain under seal. (Doc. 42 at 2; Doc. 58).

The Court now turns to the Movants' specific arguments in support of their sealing request, which are contained in the Motion (Doc. 44), the memorandum in support of the Motion (Doc. 45), the Joint Supplemental Brief in support of the Motion (Doc. 60), and the Third Supplemental Brief in support of the Motion (Doc. 74).

## I. "Judicial Records"

Movants' first argument is that the right of public access does not apply to the identities of the Parties because their identities are not "judicial records." (Doc. 74 at 4–6). The common law right of access to records of a judicial proceeding extends only to "items which may properly be considered public or judicial records—not to any and all materials produced during discovery—and it can be outweighed by competing interests." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1361 (11th Cir. 2021) (quoting *Chi. Trib.,* 263 F.3d at 1311) (internal quotation marks omitted). Generally, a document becomes a judicial record when it is filed in connection with a substantive motion. *Id.* at 1362; *see also Romero*, 480 F.3d at 1245 (concluding that material "filed in connection with any substantive pretrial motion, unrelated to discovery, is subject to the common law right of access."). In *Federal Trade Commission v. AbbVie Products LLC,* for example, the Eleventh Circuit held that "a complaint and its attachments were judicial records, emphasizing that we 'determine whether a document is a judicial record depending on the type of filing it accompanied.' " *Callahan*, 17 F.4th at 1362 (quoting *AbbVie Prods.*, 713 F.3d at 64). Even unfiled documents can be judicial records if they were "integral to the judicial resolution of the merits in any action taken by that court." *Id.* (citing *Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1167 (11th Cir. 2019)).

This inquiry is focused on the distinction between materials produced in discovery and materials filed in connection with a motion or other substantive filing.

If a document is filed in connection with a substantive motion—or if the document is itself a substantive motion or pleading—it is generally considered to be a judicial record in its entirety. *See id.* Party names, and other information that could be used to identify a party, are woven throughout the substantive filings in this case, which are all judicial records. Movants cite no authority for the proposition that some information within a substantive filing, such as the parties' identities, are exempt from the common law right of access or severable from the judicial record in which they are found. In the absence of any authority to the contrary, the Court finds that the records at issue in this case, including the identifying information therein, are judicial records and therefore subject to the common law right of access.

**II. Whether Good Cause Exists to Overcome the Presumption of Public Access**

Although the instant Motion requested a permanent seal of the entire case, (Docs. 44 & 45), the Movants' supplemental briefs suggest that they have retreated somewhat from that position and are instead focused on sealing the Parties' identities, (*see* Doc. 74). In any event, the Movants' request to permanently seal the entire case will be denied. Movants cite no authority that would permit such extraordinary relief.[1]

Movants' concerns can be satisfied through a less onerous alternative—*i.e.*, sealing their identities. The question, then, is whether Movants have established good cause to redact their identities from the filings in this case.

[1] Of course, the absence of such authority is not surprising. Permanently sealed cases do not generate reportable opinions. Therein lies a critical problem with the Movants' request. Although it is conceivably within the Court's discretion to grant this relief (if good cause exists), the undersigned declines to do so without the comfort of precedent.

Movants argue that good cause exists because the Relators, the Individual Defendants, and the Hospital Defendants would suffer concrete and irreversible harm to their respective reputations if the Court unseals either this case or their identities. The Individual Defendants are "practicing surgeons that face concrete, enduring, and unfair harm to their reputations, practices, referral relationships, and patient trust if their names are publicly tied to allegations that were denied, withdrawn, and never adjudicated." (Doc. 74 at 9 n.8). The Relators assert similar interests in "protecting their personal and professional reputations as medical providers and in avoiding embarrassment, whistleblower retaliation, or other collateral consequences of being a relator in a *qui tam* suit." (*Id.* at 22–23). The Hospital Defendants also purport to have a "well-earned community reputation and goodwill" that would be "unfairly damage[d] . . . by informing the public that Relators are former employees who accused the [Hospital Defendants] of fraud, without equally informing the public that Relators later abandoned the accusations." (*Id.* at 21).

Movants conclude, with little analysis, that the public interest in unsealing this case is minimal. They argue, among other things, that the case never proceeded past the pleading stage; thus, the allegations in the complaints were never tested. Ultimately, both the state and federal governments declined to intervene, and the case was dismissed. They also assert that this case did not involve any events of historical significance and that there is no reason to think there is any specific public interest in the allegations here. (*Id.* at 23–24).

Case 6:21-cv-00869-GAP-NWH *SEALED* Document 75 Filed 04/24/26 Page 10 of 16 PageID 531

To determine whether Movants have demonstrated good cause to overcome the presumption of public access to their identities in this case, the Court must balance the public interest in access to court records with the potential harm that Movants would suffer if the matter were unsealed. Courts consider the factors listed above as a guide. *See Gubarev*, 365 F. Supp. 3d at 1256 (citing *Romero*, 480 F.3d at 1246; *Newman*, 696 F.2d at 803). No one factor is dispositive.

The first factor that courts consider in this context is whether allowing access would impair court functions or harm legitimate privacy interests. There is no reason to think that redacting the Movants' names would impair court functions—particularly since this case is closed.

With respect to their privacy interest, Movants cite *Lawnwood Medical Center, Inc. v. Sadow*, 43 So. 3d 710, 729 (Fla. 4th DCA 2010), for the proposition that their claimed professional reputational harm is entitled to special deference. (Doc. 74 at 18). In *Lawnwood*, a surgeon (whose name is not redacted) sued a hospital for slander after senior executive officials of the hospital said, among other things, that "the doctor was not even 'qualified to perform surgery on a dog.' " *Id.* at 712. A jury awarded the doctor $5 million in punitive damages. The hospital appealed, arguing that the punitive damages were excessive. Florida's Fourth District Court of Appeals assessed the "reprehensibility" of the slanderous statements in determining whether the punitive damages were excessive. In doing so, it noted the "significant and long-lasting public and professional consequences" that the jury could have considered in reaching its verdict. It did not hold, or even opine in dicta, that there is any special privacy

Case 6:21-cv-00869-GAP-NWH *SEALED* Document 75 Filed 04/24/26 Page 11 of 16 PageID 532

protection afforded to statements that *might* affect a doctor's professional reputation.[2] Accordingly, *Lawnwood* is in inapposite; thus, Movants have failed to articulate any legitimate privacy interest at issue in *this* case.

Movants also fall short on the second and third factors—the degree and likelihood of the harm if the information were to be made public and the reliability of the information. The likelihood of harm here is speculative at best. Movants point generally to the risk of "patient suspicion, disruption of referral relationships, credentialing concerns, and opportunistic litigation," and provide an example:

> [F]ormer patients could misinterpret the allegations and pursue medical malpractice claims based on the mistaken belief that their physicians made treatment decisions for financial reasons. In that event, the only mechanism available to correct the public record would be piecemeal litigation—placing these physicians in the untenable position of having to defend against claims rooted in allegations that were never tested in this case.

(Doc. 74 at 19).

This argument, like most of the arguments in the Motion, is premised largely on the fear that a patient or other member of the public would "misinterpret" the allegations or learn about the accusations "without equally informing [themselves] that Relators later abandoned the accusations." (Doc. 74 at 19, 21). If this case is unsealed, the public will have access to not only the Complaint and the Amended

[2] Most cases addressing sealing issues involve propriety information or trade secrets—neither of which are at issue here. *See e.g., Callahan*, 17 F.4th at 1364; *AbbVie Prods.*, 713 F.3d at 58; *United States v. Lee Mem'l Health Sys.*, No. 2:14-cv-437-FtM-38CM, 2018 WL 4492271, at *2 (M.D. Fla. Sept. 19, 2018) (physician compensation data); *Loc. Access, LLC v. Peerless Network, Inc.*, No. 6:14-cv-399-Orl-40TBS, 2017 WL 2212786, at *1 (M.D. Fla. May 17, 2017); *see also Comm'r, Ala. Dep't of Corr.*, 918 F.3d at 1164 (Alabama's lethal injection protocol).

Complaint, but to the Government's notice of election to decline intervention and the Relators' notice of voluntary dismissal with prejudice. In other words, when the docket is viewed as a whole, it is clear that the allegations in the complaints were never tested and that both governments and the Realtors abandoned the claims. The potential that the public might not read the entire docket, or might misinterpret the significance of a complaint, is not a concrete harm. Movants' argument about the "reliability" of the information in the complaints is similarly faulty. The allegations in the complaints are just that: allegations. When viewed in the context of the docket as a whole, the Court cannot say that the information is unreliable.

Although there appears to be no specific public interest in this particular case, False Claims Act cases are inherently matters of public concern. As the court noted in *United States v. Lee Memorial Health System,* "by definition, an FCA complaint alleges a fraud upon the public." No. 2:14-cv-437-FtM-38CM, 2018 WL 4492271, at *7 (M.D. Fla. Sept. 19, 2018) (citation omitted) (alteration, internal quotation marks, and citation omitted). "Further, the public has a legitimate 'health and safety' interest in the details of alleged Medicare and Medicaid fraud, as in this case, because patients must be confident that their physicians are making decisions regarding appropriate treatment and referrals based on the patient's health and not on improper financial motives." *Id.* (citing *Chi. Trib.*, 263 F.3d at 1315); *see also United States ex rel. Powell v. Aerocare Holdings, Inc.*, No. 3:18-CV-00286-BJB-CHL, 2022 WL 829497, at *2–3 (W.D. Ky. Mar. 18, 2022) (collecting cases and noting that courts generally unseal False Claims Act cases after the United States declines to intervene); *United States v.*

Case 6:21-cv-00869-GAP-NWH *SEALED* Document 75 Filed 04/24/26 Page 13 of 16 PageID 534

*Aurora Diagnostics, Inc.*, No. 1:16-cv-21338-KMM, 2017 WL 8781118, at *2 (S.D. Fla. Aug. 30, 2017) (noting that "[t]he weight of authority holds that the False Claims Act does not provide for an indefinite seal to protect relators[.]").

Some factors lean in favor of the Movants' request. Defendants did not have an opportunity to respond to the allegations, and there appears to be no alternative less onerous than redacting their identities from the documents. Other factors are largely inapplicable, or not particularly significant here, including: (1) whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, (2) whether access is likely to promote public understanding of historically significant events, and (3) whether the press has already been permitted substantial access to the contents of the records.

Ultimately, after considering the various factors and balancing the competing interests here, Movants[3] have failed to meet their burden to show that there is specific information in the record that violates a legitimate privacy interest or would otherwise cause them specific or concrete harm sufficient to outweigh the public's interest in access to the records in this case. As the court recognized in *General Media, Inc. v. Shooker*, "[t]he public interest in access to the courts, and the court's own interest in allowing such access, far outweigh [the movant's] generalized concern of negative reaction on his business dealings from the instant lawsuit. If such a rationale were

[3] Although the arguments with respect to the Individual Defendants, the Hospital Defendants, and the Relators vary slightly, they are all premised on the same generalized concern over reputational harm and are rejected for the same reasons.

sufficient to block access to court files, the vast majority of lawsuits before this Court would be closed to public view." No. 97 Civ. 510(DAB), 1998 WL 401530, at *12 (S.D.N.Y. July 16, 1998). The same is true here.[4]

### III. The United States' Request to Maintain the Seal over the Memoranda in Support of its Extension Requests (Doc. 58)

The United States separately requests to keep under seal the ten memoranda it filed in support of its motions for extension of the intervention period. (Doc. 58). In contrast to the redactions requested by the Movants, documents filed by the Government that reveal its process of investigating *qui tam* cases, such as requests for extensions of time to intervene, may remain under seal indefinitely. *United States v. Sunovion Pharms., Inc.*, No. 8:14-cv-1319-T-33MAP, 2016 WL 6071737, at *1 (M.D. Fla. Oct. 17, 2016). Courts have maintained a seal over these documents where they provide "substantive details regarding the government's methods of investigation." *United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 902 F. Supp. 189, 192 (E.D. Mo. 1995) (maintaining seal on government's motions for extension of time); (*see also* Doc. 58 at 3-4 (citing several cases in this district granting the government's motion to seal)). Conversely, where such documents "do not contain names of witnesses, information about particular documents or substantive details of the investigation," courts generally decline to maintain a seal. *See, e.g.*, *United States ex rel. Yannacopolous v. Gen. Dynamics*, 457 F. Supp. 2d 854, 859–60 (N.D. Ill. 2006) (declining to maintain seal);

[4] Movants cite to several cases where party names or other information was redacted, but none of those cases include any opinions or analysis supporting the decision. As a result, they are of limited value here.

*United States v. CACI Int'l, Inc.*, 885 F. Supp. 80, 83 (S.D.N.Y. 1995) (denying Government's request to maintain seal on documents that "describe[d] routine, general investigative procedures" and did "not implicate specific people or provide any substantive details").

Upon review of the subject memoranda, all the documents that the United States seeks to keep under seal contain information about the United States' investigation with sufficient detail to risk revealing confidential investigative techniques. As such, the United States' request to seal its ten memoranda in support of its motions to extend the intervention period will be granted.

In light of the foregoing, it is therefore

**ORDERED** that the Parties' Joint Motion to Permanently Seal the Case (Doc. 44) is **DENIED**. However, the Government's request to keep under seal the memoranda in support of its motions to extend the intervention period (*see* Doc. 58) is **GRANTED**. Docket entries 5, 8, 11, 14, 17, 20, 23, 27, 36, and 40 shall remain under seal indefinitely. All other docket entries shall remain under seal pending a separate order from the Court, which will be issued no earlier than fourteen (14) days from the date of this Order.

**DONE and ORDERED** in Orlando, Florida on April 24, 2026.

NATHAN W. HILL
UNITED STATES MAGISTRATE JUDGE

Case 6:21-cv-00869-GAP-NWH *SEALED* Document 75 Filed 04/24/26 Page 16 of 16 PageID 537

Copies furnished to:

Counsel of Record