UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA and STATE OF FLORIDA *ex rel.* Tarak Hasan and Stephanie Million,

Plaintiffs-Relators,

**FILED UNDER SEAL**

v.

Case No: 6:21-cv-869-GAP-NWH

HEALTH FIRST, INC., PALM BAY HOSPITAL, INC., VIERA HOSPITAL, INC., HEALTH FIRST MEDICAL GROUP, LLC, PHYSICIAN DEFENDANT 1, and PHYSICIAN DEFENDANT 2,

Defendants.

---

## ORDER

This cause is before the Court on the Objections filed by Physician Defendant 1 and Physician Defendant 2 (the "Doctors" or "Doctor Defendants") (Doc. 80) to the United States Magistrate Judge's Order (the "Order") (Doc. 75) regarding the Joint Motion to Permanently Seal the Case (Doc. 44; Doc. 45). The Court has also considered the Parties' Joint Supplemental Brief on the Motion (Doc. 60) and Third

Supplemental Brief in Support of the Motion (Doc. 74).[1] For the reasons set forth below, the Doctors' Objections will be sustained and the Order will be affirmed in part.

## I. Background

On May 19, 2021, Relators Tarik Hasan, M.D., and Stephanie Million, D.O., (collectively, the "Relators") filed a *qui tam* action under seal pursuant to the Federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33. Doc. 1. In the Complaint (Doc. 1) and Amended Complaint (Doc. 30), the Relators allege that the Doctors Defendants—as well as Defendants Health First, Inc., Palm Bay Hospital, Inc., Viera Hospital, Inc., Health First Medical Group, LLC (the "Hospital Defendants")—knowingly and intentionally overbilled Medicare and Medicaid by performing orthopedic procedures on an inpatient basis when patients should have been treated and billed on an outpatient basis.[2] *See* Doc. 1, ¶ 1; Doc. 30, ¶ 1. On February 6, 2026, the United States and the State of Florida (collectively, the "Governments") declined to intervene in this action.[3] Doc. 42. On February 9, 2026, the Relators filed

[1] In between the first and third supplemental briefs, the Parties also filed a notice of supplemental authority pursuant to Local Rule 3.01(j) on March 5, 2026. *See* Doc. 70.

[2] The Relators filed an Amended Complaint on July 1, 2025, naming the Doctors as individual defendants for the first time. *See* Doc. 80 at 3; *see also* Doc. 30.

[3] Prior to filing its notice declining to intervene, the United States filed ten memoranda in support of its motions to extend the intervention period. *See* Doc. 5, Doc. 8, Doc. 11, Doc. 14, Doc. 17, Doc. 20, Doc. 23, Doc. 27, Doc. 36, and Doc. 40. On February 20, 2026, the United States

a notice of voluntary dismissal with prejudice (Doc. 43), and the Court dismissed the case on February 11, 2026 (Doc. 51; Doc. 55).

On February 9, 2026, the Relators, the Hospital Defendants, and the Doctors (collectively, the "Parties") filed a Joint Motion to Permanently Seal the Case, contending that the Court should maintain the case under a permanent seal and decline to publish the case name or filings on the Court's docket in any public database. Doc. 44; Doc 45.

On February 11, 2026, the Magistrate Judge ordered the Parties to submit a supplemental brief addressing contrary authority, "including what appeared to be the majority position of district courts across the country denying similar motions." Doc. 49. On February 23, 2026, the Parties filed that brief (Doc. 60), modifying their requested relief to seek, in the alternative, redacted unsealing of the case to protect the Parties' identities (*id.* at 3). On April 1, 2026, the Parties filed an additional supplemental brief (Doc. 74), where they maintained that the Court should either permanently seal this case or, at a minimum, redact the Parties' identities and status in any unsealed filings (*id.* at 3).[4]

---

requested to have these memoranda remain under seal permanently. Doc. 58.

[4] In the Local Rule 3.01(g) certificates of the Motion (Doc. 45 at 10) and the supplemental briefs (Doc. 60 at 9; Doc. 74 at 27), the Parties affirmed that when they conferred with the Governments regarding the requested relief, the Governments took no position on the Motion.

On April 24, 2026, the Magistrate Judge issued the Order, denying the Parties' Motion.[5] Doc. 75. Specifically, it held that the Parties had failed to show that the record contained information implicating a legitimate privacy interest or posing a specific, concrete harm that is sufficient to outweigh the public's interest in accessing records in this case. *Id.* at 13.

The Doctors filed the instant Objections on May 11, 2026, primarily contending that the Order treated their request to seal their identities as equivalent to wholesale sealing. Doc. 80. Specifically, they maintain that the Order evaluated public access to FCA cases generally and not the reduced public interest in the Doctors' identities. *Id*. The Hospital Defendants and the Relators do not object to the Doctors' Objections, and the Governments take no position. *Id.* at 16. The matter is now ripe for adjudication.

## II. Legal Standard

Federal Rule of Civil Procedure ("Rule") 72(a) permits a magistrate judge to issue orders deciding pretrial matters that are "not dispositive of a party's claim or defense." A party may file objections to that order within fourteen days after its service.[6] *Id.*

---

[5] The Order, however, granted the United States' request to seal its memoranda submitted in support of its motions to extend the intervention period. *See* Doc. 75 at 14-15.

[6] In their Objections, the Doctors contend that the Court should treat the Order as a recommended disposition on a dispositive matter and review it de novo, noting that a magistrate

Upon the filing of a timely objection, the district judge in the case must consider it and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1260 (M.D. Fla. 2013) (citation omitted). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law or rules of procedure.'" *Id.* (citation omitted).

## III. Analysis

"The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process." *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). But while that right "is indispensable, it is also limited." *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1361 (11th Cir. 2021). It attaches "only to

---

judge may not finally decide a collateral matter, such as this one, absent party consent. *See* Doc. 80 at 5-6; *see also* Fed. R. Civ. P. 72(b) (providing rule for orders by magistrate judges on dispositive motions and prisoner petitions). But a motion to seal is not a dispositive matter. While orders granting motions to seal are "appealable as collateral to the underlying action," (*Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1242 (11th Cir. 2007), they ultimately resolve an issue that is "separate from a lawsuit's merits." *See Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1361 (11th Cir. 2021).

items which may properly be considered public or judicial records." *Id*. (citing *Chi. Trib.*, 263 F.3d at 1311). That right may also be "overcome by a showing of good cause, which requires balancing the asserted right of access against the other party's interest in keeping the information confidential." *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (citations and internal brackets omitted).

"Courts determine whether good cause exists by looking to the nature and character of the information in question." *Comm'r, Ala. Dep't of Corrections v. Advance Local Media, LLC*, 918 F.3d 1161, 1169 (11th Cir. 2019). When evaluating good cause, "courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents."[7] *Romero*, 480 F.3d at 1246. "A party's privacy or proprietary interest in information" can also "overcome the interest of the public in accessing the information." *Id*.

[7] Courts can also consider "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records." *Advance Local Media, LLC*, 918 F.3d at 1169. But these factors are largely inapplicable here.

The Doctors do not object to the Order's finding that their names and direct identifiers are subject to the common law right of access. *See generally* Doc. 80; *see also* Doc. 75 at 7-8. Instead, the Doctors primarily contend that the Order erred by evaluating only the public interest implicated by their initial request to permanently seal the case, and not their alternative request to redact their identities. *See* Doc. 80 at 6-8. The Court agrees.

As a threshold matter, the Order recognized that the Parties had shifted their position from requesting a permanent seal of the case to a seal of their identities. *See* Doc. 75 at 8. It also framed its analysis on whether good cause existed to redact the identities of the Parties. *Id*. However, in conducting that narrower analysis, the Magistrate Judge erred by addressing the public interest in FCA cases generally and failed to consider whether the public has a meaningful interest in accessing the Doctors' identities in this particular FCA case. *See, e.g.*, Doc. 75 at 12-13.

Indeed, after reviewing the evidence, it is clear here that good cause exists to redact the Doctors' identities. *See Romero*, 480 F.3d at 1246. As the Order itself recognized, redaction would "not impair court functions—particularly since this case is closed" (Doc. 75 at 10); "the allegations in the complaints were never tested" (*id.* at 12); the Doctors "did not have an opportunity to respond" (*id.* at 13); "both [the G]overnments and the Relators abandoned the claims" (*id.*); and "there appears to be no alternative less onerous than redacting their identities" (*id.*). *See also* Doc.

80 at 5. These are all factors that weigh in favor of keeping the Doctors' identities confidential. *See Romero*, 480 F.3d at 1246.

Despite acknowledging these considerations, the Magistrate Judge nevertheless denied the request to redact the identities, concluding that: (1) no legitimate privacy interest had been articulated; (2) the likelihood of harm was merely speculative; (3) the information is reliable because the docket shows that the allegations were dismissed and never tested; and (4) there is legitimate public interest in accessing this information because it relates to patient health and safety. *See* Doc. 75 at 10-12.

But the first two conclusions give insufficient weight to the privacy interests that the Doctors detailed in their sworn declarations. *See* Doc. 60-1 at 1-4, 13-15. Those declarations identify more than a "generalized concern over reputational harm." *See* Doc. 75 at 13, n.3. Instead, they explain that publicly identifying the Doctors in connection with allegations that they made medical decisions for improper financial motives would predictably result in profession-specific harms, including the loss of patient trust, disruption of referral relationships, credentialing and licensing consequences, payor concerns, and damage to professional standing. *See* Doc. 80 at 8-9; *see also* Doc. 60-1 at 3-4, 15. Moreover, because these allegations were never tested, the Court cannot discount the likelihood that their public disclosure would needlessly result in such reputational injuries.

That risk is further heightened by the enduring nature of online publication. If the Doctors' identities are publicly disclosed, internet search results would permanently associate them with these untested allegations. *See* Doc. 80 at 9. It is therefore unrealistic to presume that the public will examine the entire docket—and thereby recognize that the case was dismissed and the allegations never tested—before forming conclusions about the Doctors' reputations. *See* Doc. 75 at 11-12; Doc. 80 at 9-10. A docket entry reflecting declination and dismissal is unlikely to undo the resulting reputational harm created by that initial association. *See* Doc. 80 at 10.

In sum, taken together, these factors weigh in favor of redacting the Doctors' identities. *See Romero*, 480 F.3d at 1246. Their redaction would mitigate the reputational harms identified by them while continuing to provide fulsome public access to the substance of this FCA action.

## IV. Conclusion

Accordingly, it is **ORDERED** that:

1. The Doctors' Objections (Doc. 80) to the United States Magistrate Judge's Order are hereby **SUSTAINED**.
2. The Magistrate Judge's Order (Doc. 75) is **AFFIRMED, except for** the portion denying the Doctors' request for redaction.
3. Docket Entries 5, 8, 11, 14, 17, 20, 23, 27, 36, and 40 shall remain under seal indefinitely.

4. All remaining docket entries, including this Order, shall be unsealed, subject to the redaction of the names of the Doctor Defendants, and in the docket text and caption, the Doctor Defendants be replaced with "Physician Defendant 1" and "Physician Defendant 2."

It is **FURTHER ORDERED** that, **on or before August 3, 2026**, the Doctors shall file under seal proposed redacted versions of all filings to be unsealed, except for the Amended Complaint.

**DONE** and **ORDERED** in Orlando, Florida on July 13, 2026.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party